# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA MARIA MALDONADO, | ) 1:04-cv-6627-SMS |
| | ) |
| Plaintiff, | ) DECISION AND ORDER ON SOCIAL |
| | ) SECURITY COMPLAINT (DOC. 1) |
| | ) |
| v. | ) ORDER DIRECTING REMAND PURSUANT |
| | ) TO SENTENCE FOUR of 42 U.S.C. § |
| JO ANNE B. BARNHART, | ) 405(g) |
| Commissioner of Social | ) |
| Security, | ) ORDER DIRECTING THE CLERK TO |
| | ) ENTER JUDGMENT FOR PLAINTIFF ANA |
| Defendant. | ) MARIA MALDONADO AND AGAINST |
| | ) DEFENDANT JO ANNE B. BARNHART |
| | ) |

Plaintiff is proceeding with counsel and is seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying an application for benefits. By order dated April 6, 2005, Judge Anthony W. Ishii reassigned this case to the undersigned Magistrate Judge upon both parties' having consented to the Magistrate's jurisdiction to conduct all proceedings, including ordering the entry of judgment, pursuant to 28 U.S.C. § 636(c). The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument.

///

<u>PROCEDURAL HISTORY</u>

On July 10, 2002, Plaintiff applied for Supplemental Security Income (SSI) with a protective filing date of June 25, 2002, alleging disability since September 1996, due to depression, anxiety, and pain in her heels and bones. (A.R. 90-108.) After Plaintiff's claim was denied initially and on reconsideration, Plaintiff requested, and appeared at, a hearing before the Honorable Bert C. Hoffman, Administrative Law Judge (ALJ) of the Social Security Administration (SSA), on January 6, 2004. Plaintiff appeared with an attorney and testified with the assistance of an interpreter before the ALJ. On February 24, 2004, the ALJ denied Plaintiff's application for benefits. (<u>Id.</u> at 19-24.) Plaintiff appealed the ALJ's decision to the Appeals Council. After the Appeals Council denied Plaintiff's request for review on September 29, 2004, Plaintiff filed the complaint in this action on December 1, 2004. (<u>Id.</u> at 4-6.) Briefing commenced on June 20, 2005 and was completed on August 4, 2005.

<u>FACTUAL SUMMARY</u>

The ALJ found that Plaintiff had severe impairments of degenerative disc disease of the thoracic and lumbar spine, gastroesophageal reflux disease (GERD), and a depressive disorder not otherwise specified that did not meet or equal listed impairments and did not preclude Plaintiff from performing her past relevant work as a fruit sorter. (A.R. 20.)

Plaintiff had a history of treatment and evaluation for a depressive disorder. (A.R. 208-224, 434-532, 361-76.) She received treatment for depression in 1997 and again in 2000 through 2002, when medications resulted in an improvement. In

2

2003, Plaintiff suffered further symptoms; in July 2003, she reported hearing voices for two months. By October 2003, Plaintiff was doing fine on medications with no side-effects.

With respect to Plaintiff's physical impairments, she underwent a surgical repair of a hiatal hernia in December 2001 and by 2002 denied abdominal pain except for problems with eating large meals. (A.R. 248-86.) She suffered a broken arm in 1999 and some pain thereafter. (A.R. 238.) She experienced pain in her head, shoulder, back, and other areas from what was diagnosed as arthritis, and she took medications. (A.R. 229-234, 236, 238, 241, 311, 313-14, 321.) An x-ray of the elbow in 2003 was normal. (A.R. 296.) X-rays of the thoracic and lumbar spine in 2002 and 2003 showed only mild degenerative changes with normal disc spaces and without compression fractures or destructive bone lesions. (A.R. 289, 307.) A study of the hips and pelvis in January 2002 was normal. (A.R. 323.) There were laboratory tests that were negative for rheumatoid factor (e.g., A.R. 171-72, 174, 288, 319), but some tests indicated a high sed rate (e.g., 228, 314, 318-20, 330, 429).

A more detailed history of the medical record concerning Plaintiff's physical impairments is set forth in the analysis that follows.

<u>SCOPE AND STANDARD OF REVIEW</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).

Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may not simply isolate a portion of evidence that supports the decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See, Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of

4

the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th Cir. 1987).

ANALYSIS

I. Disability

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical

evidence the claimed impairment is severe, that is, of a
magnitude sufficient to limit significantly the individual's
physical or mental ability to do basic work activities; 3)
whether solely on the basis of medical evidence the impairment
equals or exceeds in severity certain impairments described in
Appendix I of the regulations; 4) whether the applicant has
sufficient residual functional capacity, defined as what an
individual can still do despite limitations, to perform the
applicant's past work; and 5) whether on the basis of the
applicant's age, education, work experience, and residual
functional capacity, the applicant can perform any other gainful
and substantial work within the economy. See 20 C.F.R. § 416.920.

        II. Plaintiff's Credibility

        Plaintiff testified that she stopped working at a packing
house in 1997 because her bones in her elbows, shoulders, knees,
ankles, hands, and back hurt; the pain was steady. She had some
pain in her shoulders, but not a lot; she could raise her arms
over her head some but it hurt. Her arms and hands hurt, and her
hands got numb and swelled. She felt the pain and swelling more
at night. She testified that she could not bend to pick up little
things but could close her hands and pick up things with her
hands from a table, such as pennies or dimes, or like a gallon of
milk, without hurting. (A.R. 47-48.) She almost always had a
steady pain in her back that would manifest itself on one side,
in the middle, or in both sides. It affected her ability to sit.
Her hips also hurt if she sat too long. (A.R. 47-48.) She had
pain in her knees; the right one was worse. She had pain in the
soles of her feet and her ankles. (Id. p. 48-50.) Also, every day

Plaintiff had a throbbing headache in her forehead and eyes that only lasted for a while, sometimes in the morning or sometimes in the afternoon. She took Tylenol for the headaches and would lie down for about an hour for it to work. (Id. 52-53.)

Plaintiff took medicine for her pain which calmed down the pain some but did not make it go away. She took two codeine tablets in the morning and again in the afternoon; it worked to calm the pain and caused no side effects. She also took Celebrex in the morning and evening for arthritis, and it helped some by calming the pain and made her more flexible, able to reach, and able to grab things. (Id. p. 51.) One medication caused her dizziness, but it was not clear that Plaintiff was taking that medication. (Id. p. 52.) Plaintiff testified that she had a driver's license and drove a little bit, although sometimes she did not want to drive because she was dizzy. (Id. p. 52.)

Plaintiff complains that the ALJ failed to state adequate reasons for rejecting Plaintiff's credibility with respect to pain in her back, legs, feet, knees, and head, and numbness in her hands.

The existence and severity of a person's reaction to a physical ailment, such as the existence and severity of pain, are subjective phenomena, the extent of which cannot be objectively measured. Byrnes v. Shalala, 60 F.3d 639, 642 (9th Cir. 1995). In order to reject a claimant's subjective complaints, the ALJ must provide specific, cogent reasons for the disbelief. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant introduces medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the

7

subjective symptoms, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence such as objective medical findings. Id.; Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Unless there is affirmative evidence tending to show that the claimant is malingering, the reasons for rejecting the claimant's testimony must be clear and convincing, and the ALJ must set forth the rejection by identifying what testimony is not credible and what evidence undermines the claimant's complaints. Lester v. Chater, 81 F.3d at 834. The findings of the adjudicator must be properly supported by the record and must be sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-46; Byrnes v. Shalala, 60 F.3d at 641-42 (9th Cir. 1995); see 20 C.F.R. § 416.929(c).

Social Security Ruling 96-7p directs the adjudicator to consider not only objective medical evidence of signs, laboratory findings, and medical opinions, but also the following factors when assessing the credibility of an individual's statements:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and adverse side effects of any medication for pain or other symptoms;
5. Treatment, other than medication, for relief of pain or other symptoms;
6. Any measures other than treatment used by the individual to relieve the pain or other symptoms; and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See also <u>Bunnell v. Sullivan</u>, 947 F.2d at 346.

The ALJ noted his obligation to consider all Plaintiff's symptoms, including pain. (A.R. 22.) He determined that Plaintiff suffered severe impairments of degenerative disc disease of the thoracic and lumbar spine, gastroesophageal reflux disease (GERD), and a depressive disorder not otherwise specified. (<u>Id.</u> p. 20.) He concluded, however, that Plaintiff's subjective complaints were not sufficiently credible to warrant restrictions greater than those established by the objective medical record. (<u>Id.</u> p. 22.)

Here, the ALJ stated clear and convincing reasons for rejecting Plaintiff's credibility. The ALJ noted Plaintiff's activities of daily living, including cooking and cleaning, socializing, feeling good, sleeping well, and having a good appetite, as Plaintiff reported to Dr. Tieu in June 2002. (A.R. 22, 209-210.) The ALJ mentioned Plaintiff's acknowledgment in July 2003 that she was able to do housework with her husband's help, manage her money, walk with her husband, visit her children's school, and attend church services weekly. (A.R. 22, 454.) He also noted Plaintiff's own testimony that she drove, attended church multiple times a week, read in Spanish, cared for her disabled husband, cooked, cleaned, and did the dishes with her husband, walked to the grocery store and shopped, visited her sister, and enjoyed Spanish TV programs and listening to music as well as planning trips to El Paso, Texas with her husband by bus. (A.R. pp. 22-23, 62-66, 444.)

A claimant's ability to engage in activities of daily living to the extent that he or she spends a substantial part of his day

engaged in pursuits involving the performance of physical functions that are transferable to the work setting is relevant; a specific finding as to this fact may be sufficient to discredit a claimant's allegations. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Contrary to Plaintiff's contention, it appears that Plaintiff regularly performed substantial housework and engaged in considerable activities, such as shopping, driving, reading, studying, socializing, traveling, managing money, and planning, that would be transferable to a work setting. The record here contained multiple sources that indicated that Plaintiff engaged in the usual activities of daily living involved in her caring for herself, her home, and her disabled husband, as well as leisure and social activities. Her testimony about her daily activities reflected that she took medications which controlled her pain; only her headaches lasted a while and required her to rest for about an hour. (A.R. 49-53, 62.) Substantial evidence supports the ALJ's implicit conclusion that Plaintiff spent a substantial part of her day engaged in pursuits involving the performance of physical functions and mental tasks that are transferable to the work setting.

The ALJ also stated:

> The claimant's credibility is open to question given Dr. Gurdin's assessment that the claimant gave a poor effort to cooperate with much of his examination. Indeed, he opined that there appeared to be a substantial discrepancy between what the claimant is capable of doing and what she was willing to attempt (Exhibit 6-F: 2).

(A.R. 22.)

Dr. Gurdin performed a consultative orthopedic evaluation of Plaintiff on October 1, 2002. (A.R. 245-47.) He noted her complaints of foot pain despite past surgery to remove spurs on her feet; she had no swelling but had occasional cramping in the arches of the feet. He noted her complaints of back pain and her family practitioner's treatment with only medication for what was said to be arthritis; she complained of intermittent pain in the low back precipitated by bending, lifting, twisting, and prolonged walking and standing. He noted no locking, swelling, or collapsing of her knees despite her complaints of pain in both knees with walking and standing. She complained of intermittent daily pain throughout both arms that came on with repetitive or strenuous hand use. She admitted that she could stand for an hour and lift ten to fifteen pounds. The physical examination revealed level pelvis, straight spine, normal lumbar lordosis, and reported pain in the entire spine without definite muscle tightness or pain with axial compression. She complained of slight tenderness about both shoulder joints, but there was no crepitus with motion or restriction of motion. She complained of tenderness throughout the upper arms, forearms, elbows, wrists and hands, but there were no obvious deformities in any of these areas and no soft tissue swelling; she was able to make a fist with both hands, and dexterity, grip strength, and arm strength were normal and rated at 5/5; deep tendon reflexes were 2+ bilaterally. She did not limp; straight leg raising was to 75 degrees bilaterally with hamstring tightness; seated straight leg raising was also negative bilaterally. Although she complained of slight generalized tenderness about both knee joints, there was

no soft tissue swelling or joint effusion on either side, the ligaments were intact, there was no subpatellar crepitus with motion, and McMurray's tests were negative. Muscle strength was normal in both legs and rated 5/5; deep tendon reflexes were 2+ bilaterally, and sensation was intact. Plaintiff's obesity precluded accurate measurements of her legs. The diagnosis was prior heel spurs with surgical resection by history, probable arthritic changes of the M.P. joints of both feet, lumbar myofascitis with possible degenerative change, obesity, and depression by history. Dr. Gurdin remarked that in addition to being slow and lethargic and having a flat affect consistent with a diagnosis of depression, Plaintiff "gave a poor effort to cooperate with much of the examination." (A.R. 246.) He also reported that she gave poor effort to walk heel-to-toe and on both heels and toes. (Id.) He concluded:

> In spite of the patient's complaints, other than her obesity the objective physical findings were rather minimal. There appears to be a substantial discrepancy between what she is capable of doing and what she is willing to attempt with her psychiatric disorder. Because of this I am unable to accurately estimate her activity capacity.

(A.R. 247.)

Plaintiff argues that the ALJ could not rely on Dr. Gurdin's report in rejecting Plaintiff's credibility because Dr. Gurdin concluded that Plaintiff had a psychological reason for not cooperating or making an effort during the examination. Central to Plaintiff's contention is the assumption that the ALJ understood Gurdin to be opining that Plaintiff was malingering. However, in view of Gurdin's explanation that depression was the reason for Plaintiff's poor effort, it is not reasonable to

conclude that the ALJ, who did not reject Gurdin's opinion, concluded that Plaintiff was malingering. Instead, the ALJ's conclusion is reasonably interpreted as a determination that Plaintiff's depression interfered with Plaintiff's effort. Regardless of the genesis of Plaintiff's poor effort, poor effort at a physical examination would call into question the objectivity of any physical limitations that Plaintiff claimed in connection with the exam.

In rejecting testimony regarding subjective symptoms, permissible grounds include conflicts between the claimant's testimony and his conduct, or internal contradictions in the testimony. <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ may consider whether the Plaintiff's testimony is believable or not. <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1090 (9th Cir. 1999).

The ALJ also concluded that Plaintiff could perform medium work with occasional stooping and crouching, or medium, unskilled work; he further determined that this was consistent with the treating record and clinical evidence on file and the objective medical record. (A.R. 20, 22.) The objective medical evidence concerning Plaintiff's physical impairments will be discussed in further detail in connection with Plaintiff's residual functional capacity. A review of the record in its entirety reveals that there were only minimal objective findings with respect to Plaintiff's spine and extremities, and an absence of limitations imposed by the physicians that could be considered inconsistent with the RFC ultimately adopted by the ALJ. Substantial evidence supports the ALJ's conclusion that medium work with the postural

limitations was consistent with the clinical and objective

medical record. Although the inconsistency of objective findings

with subjective claims may not be the sole reason for rejecting

subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792

(9th Cir. 1997), it is one factor which may be considered with

others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004);

Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir. 1999); Burch

v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The Court concludes that the ALJ cited clear and convincing

reasons for rejecting Plaintiff's subjective complaints of pain

and limitation to the extent alleged, and that the ALJ's reasons

were properly supported by the record and sufficiently specific

to allow this Court to conclude that the ALJ rejected the

claimant's testimony on permissible grounds and did not

arbitrarily discredit Plaintiff's testimony.

III. Residual Functional Capacity

The ALJ concluded that Plaintiff could perform medium work

with only occasional stooping and crouching activities, and with

a limitation to simple and unskilled work because of Plaintiff's

moderate depressive disorder. (A.R. 22.)

Plaintiff argues that the ALJ erred in failing to include in

the residual functional capacity (RFC) a limitation relating to

her subjective claim of numb hands.

The ALJ must consider all factors that might have a

significant impact on an individual's ability to work, including

the side effects of medications as well as subjective evidence of

pain. Erickson v. Shalala, 9 F.3d 813, 817 (9th Cir.1993) (citing

Varney v. Secretary of HHS, 846 F.2d 581, 585 (9th Cir. 1987),

1  relief modified, 859 F.2d 1396 (1988)). Where there is a medical

2  opinion that indicates or suggests that an impairment has an

3  effect on a claimant's ability to work, the impairment must be

4  figured into the RFC analysis. See Beecher v. Heckler 756 F.2d

5  693, 695 (9th Cir. 1985). However, generally a condition need not

6  be considered in determining RFC if there is no medical opinion

7  suggesting that the condition contributes to the Plaintiff's

8  inability to perform work, or if such opinion has been properly

9  discredited. Goodenow-Boatsman v. Apfel, 2001 WL 253200, *11

10  (N.D. Cal. 2001).

11      The medical evidence concerning Plaintiff's hand function

12  may be briefly summarized.

13      On October 1, 2002, Dr. Gurdin received Plaintiff's

14  complaint of intermittent daily pain extending throughout both

15  arms coming on with repetitive or strenuous hand use, probably

16  due to arthritis; however, he found that Plaintiff was able to

17  make a fist with both hands, and manual dexterity was normal;

18  both grip and arm strength were normal and rated at 5/5, and deep

19  tendon reflexes were also normal at 2+ bilaterally. There was no

20  tissue swelling. (Tr. 246.)

21      Dr. James V. Glaser, M.D., a state agency physician,

22  evaluated Plaintiff's obesity on October 29, 2002. He concluded

23  that Plaintiff could occasionally lift fifty pounds, frequently

24  lift and/or carry twenty-five pounds, and engage in unlimited

25  pushing or pulling; there were no manipulative limitations. (A.R.

26  351-60.)

27      Dr. Sadda V. Reddy, a board certified neurosurgeon and state

28  agency physician, evaluated on March 20, 3003, Plaintiff's

degenerative arthritis in the lumbar and thoracic spine, marked obesity, arthralgias, and elevated ESR. (A.R. 342-50.) She opined that Plaintiff could lift fifty pounds occasionally, twenty-five pounds frequently, sit about six hours, and engage in unlimited pushing and/or pulling. Although Dr. Reddy imposed some postural limitations (only occasional stooping and crouching), the doctor imposed no manipulative limitations. He expressly concluded that considering her chronic back pain, arthralgias, elevated sedimentation rate, marked obesity, x-ray findings of degenerative changes and observations of reduced range of motion, a medium RFC was appropriate. (A.R. 349.)

On April 9, 2003, Plaintiff's neurologist, Dr. Mythili Sundaresan, examined Plaintiff and observed tenderness along the peripheral nerves in both the upper and lower extremities. Plaintiff complained of weakness in her right arm for a year associated with numbness. (Tr. 380.) A neurological exam revealed bilateral weakness in the supraspinatus, infraspinatus and triceps right more than left and in her right grip. However, tone, coordination, and deep tendon reflexes of the upper and lower extremities were within normal limits. Sensory modalities showed impaired pinprick throughout the right leg and left arm with reduced vibratory sensation distally in her legs and along the left ulnar distribution. (Tr. 383.) Dr. Sundaresan stated that included in the things that had to be considered in her were temporomandibular joint dysfunction with muscle contraction headaches, headaches associated with hypoglycemia, bilateral C5, C6 root lesion, bilateral L4, L5, and S1 root lesion, and brachial and lumbosacral plexopathy. (Id.) Dr. Sundaresan

requested x-rays and blood work and planned to consider electrodiangostic procedures for the symptoms of her extremities. (Id.)

An MRI of Plaintiff's cervical spine performed at Tulare District Hospital on April 9, 2003, at the request Dr. Sundaresan, revealed that there were degenerative changes at C5-6, including mild disc space narrowing at C5-6 with some sclerosis and osteophyte formation; there was no evidence of compression fracture of paraspinous mass; uncovertebral joints were sharp, and the neural foramina were patent. (A.R. 390.) An MRI of the lumbar spine taken the same day revealed minimal degenerative change involving the lumbar spine with minimal sclerosis and osteophyte formation involving the lumbar vertebral bodies, with vertebral body heights and disc spaces maintained. (A.R. 391.)

On April 30, 2003, Dr. Sundaresan saw Plaintiff for a follow-up and counseled Plaintiff to lose weight on a high protein, low carbohydrate diet with frequent, small meals. Her working diagnosis was temporomandibular joint dysfunction and muscle contraction headaches associated with hypoglycemia and bilateral C5, C6 root lesion, bilateral L4, L5, and S1 root lesion and/or associated brachial and lumbosacral plexopathy. She prescribed medication, Topamax, and requsted an EMG/NCV of the upper and lower extremities to see if Plaintiff had neuropathy because she had complained of weakness of her arms and cramps in her legs. (Tr. 378-79.)

Dr. Sundaresan performed nerve conduction studies of Plaintiff's upper extremities on June 7, 2003 and received

essentially normal electrophysiological findings. (A.R. 386-89.)
The findings were that the motor conductions, distal latencies,
amplitudes and "F" responses, and sensory distal latencies were
within normal limits with no pathological potentials seen. (A.R.
388-89.) On June 18, 2003, she last saw Plaintiff and noted the
essentially normal EMG/NCV results. (A.R. 377.)

The medical evidence did not contain an opinion that
indicated or suggested that an impairment of her upper
extremities had an effect on her ability to work.

The testimonial evidence included Plaintiff's claim of hand
pain as well as her admissions that she could lift a gallon of
milk, close her hand, and pick up small objects without pain; her
problems with swelling and pain were felt more at night, and her
pain medications calmed the pain and rendered her flexible
without side effects. (A.R. 46-48, 50-51.) She could fold
clothes, cook, and wash her hair without any reported difficulty.
(A.R. 60, 62-63.)

Further, with respect to Plaintiff's claim of pain or
numbness in her hands, the ALJ noted Plaintiff's complaints of
arm pain, her admitted ability to lift ten to fifteen pounds, and
her grip strength (A.R. 20.) As previously noted, the ALJ's
rejection of Plaintiff's claims of pain and subjective symptoms
(A.R. 22-23) was accompanied by a statement of clear and
convincing reasons supported by substantial evidence in the
record.

Accordingly, because of the absence of credited evidence of
an effect on Plaintiff's ability to work, the Court rejects
Plaintiff's contention that the ALJ's RFC erroneously omitted

Plaintiff's claimed numbness of the hands.

IV. <u>Past Relevant Work</u>

The ALJ concluded that Plaintiff could perform her past relevant work of fruit packer because it involved lifting no more than ten pounds and involved basically standing and sorting fruit. Because it did not require the use of machines, tools, equipment, technical knowledge, supervision, skills, or need to write reports or complete forms, Plaintiff could perform it with an RFC of medium, unskilled work. (A.R. 23.)

Plaintiff argues that the ALJ did not adequately analyze Plaintiff's ability to perform her past relevant work (PRW). Plaintiff asserts that the ALJ based his conclusion at step four that Plaintiff could perform her PRW of fruit sorter solely on the standing and lifting requirements; further, the ALJ did not adequately determine that Plaintiff had the required persistence or pace in view of the ALJ's finding that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace due to her depressive disorder. (A.R. 22.) Likewise, he omitted treatment of Plaintiff's claimed inability to bend from the waist. Defendant does not address the argument regarding persistence and pace, although Defendant argues that the RFC for simple, unskilled medium work was consistent with Plaintiff's PRW.

The claimant has the burden of proving an inability to return to his former type of work and not just to his former job. <u>Pinto v. Massanari</u>, 249 F.3d 840, 845 (9th Cir. 2001) (quoting <u>Villa v. Heckler</u>, 797 F.2d 794, 790 (9th Cir. 1986)). Although the burden of proof lies with the claimant at step four, the ALJ

still has a duty to make the requisite factual findings to support his conclusion. Soc. Sec. Ruling 82-62. This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(e), (f); 416.960. The claimant must be able to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; or
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

Soc. Sec. Ruling 82-61. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. Soc. Sec. Ruling 82-62; Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Information regarding a claimant's past relevant work as performed may come from the claimant's testimony or a properly completed vocational report. Pinto v. Massanari, 249 F.3d at 845. The best source for how a job is generally performed is usually the Dictionary of Occupational Titles (DOT).[1] Id. at 845-86.

   With respect to Plaintiff's subjective claim of inability to bend, the Court has previously noted the legal sufficiency of the ALJ's rejection of Plaintiff's subjective complaints of limitations and the propriety of the RFC.

   Plaintiff completed a work history report dated August 6, 2002. (A.R. 125-32.) Plaintiff listed two jobs, packer and

---

[1]       All references to the DOT are to the Dictionary of Occupational Titles, fourth edition revised in 1991.

sorter, that she had held in the past. She described her job of fruit sorter as involving standing and sorting fruit. It did not involve the use of machines, tools, equipment, technical knowledge, technical skills, writing reports, or completing forms. She stood eight hours, walked three, sat for one-half hour, and handled, grabbed, or grasped big objects for eight hours. She handled all sizes of fruit. All she did was sort; the heaviest weight she lifted was ten pounds; she indicated that the lifting section was not applicable. She did not supervise or lead others. The job did not involve any kneeling, crouching, crawling, climbing, or stooping. (A.R. 125-26.) Plaintiff described two other jobs of sorting lemons and nuts. (A.R. 127-28.) Again, these positions involved the same activities and involved lifting less than ten pounds frequently. (A.R. 127-28.) Plaintiff's testimony at the hearing was not inconsistent. Plaintiff testified that she stood at a conveyor belt and took out the bad fruit. Sometimes they would have her arrange some fruit and then put boxes down on the floor. She did not know how heavy the boxes were. Sometimes she also worked in a freezer, but sometimes she would decline to work in the freezer because her bones hurt. (A.R. 42-44.) Consistent information was provided by Plaintiff in her disability report of July 2002. (A.R. 100.)

Plaintiff thus described the skill level and the exertional and physical non-exertional demands of her work.

Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §

1  416.967(c).

2      Substantial evidence supports the ALJ's conclusion that

3  Plaintiff, whose RFC permitted lifting over ten pounds, could

4  perform the lifting requirements of the job. The limitations on

5  posture (only occasional stooping and crouching) were also

6  consistent with an ability to perform a job that involved no

7  stooping and crouching.

8      With respect to Plaintiff's depressive disorder, the ALJ

9  reviewed the medical history and stated:

10         Following a thorough review of the aforementioned
           evidence, I find that the claimant's capacity for
11         medium work with a limitation to occasional stooping
           and crouching activities is further restricted
12         by her moderate depressive disorder, which still
           allows for simple and unskilled work. This results
13         in no restriction of activities of daily living, moderate
           difficulties in maintaining social functioning, moderate
14         difficulties in maintaining concentration, persistence
           or pace and no repeated episodes of decompensation. I
15         acknowledge the claimant's new and recent psychotic
           allegations. However, the evidence suggests some stability
16         on medication. As this is a new factor, it does not meet
           the durational requirement.
17
18  (A.R. 22.)

19      Plaintiff correctly contends that the ALJ failed to

20  undertake the required gathering of information and analysis and

21  failed to render the required findings with respect to the

22  persistence and pace necessary to perform the work requirements

23  of the job. The ALJ expressly found moderate difficulties in

24  maintaining concentration, persistence, or pace. Plaintiff

25  established that her PRW involved sorting fruit that was on a

26  conveyor belt. The fact that the PRW involved keeping up with a

27  supply of fruit on a conveyor belt means that Plaintiff's

28  concentration, persistence, and pace were important factors to be

considered with respect to Plaintiff's ability to perform PRW. A search of the medical records regarding Plaintiff's depressive disorder reveals no information regarding the nature or extent of Plaintiff's difficulties with concentration, persistence, or pace that would support the ALJ's conclusion that Plaintiff could perform her PRW.

The Court notes that the ALJ found that Plaintiff's "moderate depressive disorder" still allowed for "simple and unskilled work." (A.R. 22.) A skill is knowledge of a work activity that requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation that is above the unskilled level (requires more than thirty days to learn). Soc. Sec. Ruling 00-4p (citing Soc. Sec. Ruling 82-41). Difficulties in concentration, persistence and pace, on the other hand, refer to the ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in work settings; they can involve problems with memory, concentration, or pace. 20 C.F.R., Pt. 404, Subpt P, App. 1, § 12.00(c)(3). In work evaluations, concentration, persistence, or pace is assessed by testing the ability to sustain work using appropriate production standards. Id. A limitation to simple work relates to the complexity of the tasks involved. A limitation to unskilled work[2] relates to the extent of training time and the amount of judgment involved in performing the simple duties. These

---

[2] Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. 20 C.F.R. § 416.968; S.S.R. 83-10.

1  limitations of skill level and simplicity do not pertain to the

2  separate problem of concentration, persistence, or pace. See,

3  Newton v. Chater, 92 F.3d 688, 694-95 (8th Cir. 1996) (cited with

4  apparent approval in Thomas v. Barnhart, 278 F.3d 947, 956 (9th

5  Cir. 2002)) (hypothetical concerning education, ability to read

6  and write, intelligence, inability to perform highly skilled

7  work, and capacity to perform simple jobs did not address

8  deficiencies of concentration, persistence, or pace affecting

9  ability to complete work in a timely manner).

10     The ALJ's conclusion regarding Plaintiff's ability to

11  perform her PRW is unaccompanied by the necessary findings and

12  lacks the support of substantial evidence.

13     Accordingly, the matter must be remanded for further

14  proceedings, including development of the record concerning the

15  nature and extent of Plaintiff's difficulties in concentration,

16  persistence, or pace and concerning the requirements of

17  Plaintiff's PRW; further hearing; and for the ALJ to make

18  specific findings as to the claimant's residual functional

19  capacity, the demands of the past relevant work, and the relation

20  of the residual functional capacity to the past relevant work.

21                            DISPOSITION

22     Based on the foregoing, the Court concludes that the ALJ's

23  decision was not supported by substantial evidence in the record

24  as a whole and was not based on proper legal standards.

25     Accordingly, it IS ORDERED that

26     1. Plaintiff's social security complaint IS GRANTED IN PART,

27  and

28     2. The matter IS REMANDED pursuant to sentence four of 42

                               24

U.S.C. § 405(g) for further consideration, consistent with this decision, of Plaintiff's status as disabled, including whether or not Plaintiff could perform her past relevant work, and, if appropriate, any work existing in significant numbers within the economy; the proceedings upon remand should include development of the record concerning the nature and extent of Plaintiff's difficulties in concentration, persistence, or pace and concerning the requirements of Plaintiff's past relevant work; further hearing; and the making by the ALJ of specific findings as to the claimant's residual functional capacity, the demands of the past relevant work, and the relation of the residual functional capacity to the past relevant work; and

3. Judgment BE ENTERED for Plaintiff Ana Maria Maldonado and against Defendant Jo Anne B. Barnhart.

IT IS SO ORDERED.

**Dated:    September 11, 2006**          /s/ Sandra M. Snyder
icido3                                   UNITED STATES MAGISTRATE JUDGE